FILED

2016 DEC 23  PM 3: 54

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARIA LOPEZ,

    Plaintiff,

CASE NO.: 6:16-CV-2209-ORL-22TBS

-VS-

ULTIMATE FITNESS GROUP, LLC
d/b/a ORANGETHEORY FITNESS

    Defendant.
_____/

## COMPLAINT

1.     Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA").

## INTRODUCTION

2.     The TCPA was enacted to prevent companies like ULTIMATE FITNESS GROUP, LLC d/b/a ORANGETHEORY FITNESS ("Orangetheory Fitness") from invading American citizens' privacy and prevent abusive "robo-calls."

3.     "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." Mims v. Arrow Fin. Servs., LLC, –US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

4.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to

1



rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991) Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

## JURISDICTION AND VENUE

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. The alleged violations described herein occurred in Orange County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2),

as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Orlando, Orange County, Florida.

10. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Plaintiff is a "consumer" as defined in Florida Statute §559.55(8).

12. Defendant is a foreign limited liability company with a principal place of business located at 1815 Cordova Road, Suite 206, Ft. Lauderdale, and conducting business in the state of Florida.

13. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

14. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

15. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (407) *** - 6496, and was the called party and recipient of Defendant's hereinafter described calls.

16. In or about May of 2016, Plaintiff began receiving calls and text messages to her aforementioned cellular telephone from Defendant seeking to recover an alleged debt.

17. Upon receipt of the calls and text messages from Defendant, Plaintiff's caller ID identified the calls and text messages were being initiated from, but not limited to, the following phone numbers: (407) 720-4646 and (321) 418-7067, and when those numbers are called, an automated message plays stating "This call is being recorded. If you do not wish to be recorded. Please disconnect at this time."

18. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because when she answered a call from the Defendant she would hear either an extended pause before a representative would come on the line, or an automated message telling her the call was from Orangetheory and was being recorded.

19. Furthermore, some or all of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

20. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

21. Upon information and belief, and based on the receipt of often identical and repetitious text messages, some or all of the text messages the Defendant sent to Plaintiff's cellular telephone number were placed using automated telephone dialing

equipment, which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers without hum intervention as specified by 47 U.S.C § 227(a)(1). (Please see attached **Exhibit "A"** representing a non-exclusive images of text messages received from May 27, 2016 through August 25, 2016).

22. Each of the text messages at issue initiated by the Defendant included a call back number and provided no way for the Plaintiff to be removed from the messaging list.

23. None of Defendant's text messages placed to Plaintiff's cellular telephone were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

24. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls and text messages.

25. In or about May of 2016, Plaintiff received a call from the Defendant, was connected to a live representative, and informed that agent/representative of Defendant that she was aware of her obligation, she stopped utilizing their gym, the constant calls and text messages were harassing, and demanded that the Defendant cease placing calls and sending text messages to her aforementioned cellular telephone number.

26. During the aforementioned phone conversation in or about May of 2016 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

27. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

28. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

29. Each subsequent text message the Defendant sent to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

30. Each subsequent text message the Defendant sent to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

31. Additionally, on or about August 4, 2016, due to continued automated calls and text messages to her aforementioned cellular telephone number from the Defendant, Plaintiff responded to a text message and effectively demanded that Defendant sending text messages to her aforementioned cellular telephone number by replying "[s]top txtg".

32. Further, on or about August 8, 2016, due to continued automated calls and text messages to her aforementioned cellular telephone number from the Defendant, Plaintiff responded to a text message from the Defendant, informed the agent that she had not been to the gym for months, the calls and text messages were harassing, and again demanded that Defendant cease placing calls and sending text messages to her aforementioned cellular telephone number.

33. Again, on or about August 9, 2016, due to continued automated calls and text messages to her aforementioned cellular telephone number from the Defendant,

Plaintiff called the local Orangetheory Fitness location, was eventually connected to the branch manager named "Sarah" and informed "Sarah" that she had previously demanded that they not call or text her cellular phone, and again demanded that Defendant cease placing calls and sending text messages to her aforementioned cellular telephone number.

34. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling and texting the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call or send text messages to her aforementioned cellular telephone number.

35. On at least four (4) separate occasions, Plaintiff has either answered a call from Defendant or returned a text message to Defendant regarding her account and demanded that Defendant cease placing calls and sending text messages to her aforementioned cellular telephone number. Her principal reason for responding to these calls and text messages and making these demands of Orangetheory Fitness was the cumulative injury and annoyance she suffered from the calls and text messages placed by Orangetheory Fitness. These injuries are further described in paragraphs 39 through 45 herein.

36. Each of the Plaintiff's requests for the harassment to end were ignored.

37. From about May of 2016 through the filing of this Complaint, Defendant has placed approximately one-hundred twenty (120) actionable calls to Plaintiff's aforementioned cellular telephone number and approximately fifty (50) actionable text messages. (Please see attached **Exhibit "B"** representing a non-exclusive call log of

twenty-eight (28) calls in less than a three (3) week period from August 7, 2016 through August 26, 2016).

38. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling and sending text messages multiple times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

39. From each and every call and text message placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

40. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant call.

41. From each and every call and text message placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. Plaintiff had to waste time to deal with missed call notifications, missed text messages, and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

42. Each and every call and text message placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them or reviewing the messages. Even for unanswered calls,

Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

43. Each and every call and text message placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

44. Each and every call and text message placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

45. As a result of the calls and text messages described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

46. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

47. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

48. Defendant violated the TCPA with respect to the Plaintiff.

49. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

50. Plaintiff incorporates paragraphs one (1) through forty-nine (49) above as if fully set forth herein.

51. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls and text messages made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff did not wish to receive any telephone communications from Defendant, and demanded for the calls and text messages to stop.

52. Defendant repeatedly placed non-emergency telephone calls and sent non-emergency text messages to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

### COUNT II
### (Violation of the FCCPA)

53. Plaintiff incorporates paragraphs one (1) through forty-nine (49) above as if fully set forth herein.

54. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

55. Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

56. Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

57. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully Submitted,

*s/Shaughn C. Hill*
Shaughn C. Hill, Esquire
Florida Bar No.: 105998
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Shill@ForThePeople.com
LCrouch@ForThePeople.com
Attorney for Plaintiff